IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF AN APPLE, MODEL: IPHONE, MODEL: 11 CELLULAR PHONE, IMEI: 355230550912277, MORE FULLY DESCRIBED IN ATTACHMENT A | Case No. 3:22-MJ-1215<br><br>**Filed Under Seal** |

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

**AFFIDAVIT**

I, James Makemson, a Special Agent ("SA") with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), and being duly sworn, depose and state as follows:

**Agent Background**

1. I am an investigative or law enforcement officer of the United States within the meaning of Title 18, United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), United States Department of Justice, and have been so employed since May of 2017. I am a graduate of the Federal Law Enforcement Training Center and the ATF National Academy. I was also a Deputy Sheriff with the Hamilton County Sheriff's Office in Chattanooga, Tennessee from 2009 to 2017 and graduated from the Tennessee Law Enforcement Training Academy in Donaldson, Tennessee in 2010. I have a Bachelor's of Science in Biology with a minor in Criminal Justice from the University of Tennessee.

1

3. As a result of my employment, training and experience as a state law enforcement officer and an ATF Special Agent, I have received training in connection with, and conducted investigations of violations of the National Firearms Act, Gun Control Act, Title 18, United States Code, Sections 922(g), 924(c) and other violations under Title 21 of the United States Code to include conspiracy to possess and possession with intent to distribute controlled substances. I have also received training and conducted investigations involving unregistered weapons that fall under the National Firearms Act of 1934 within Title 26 of the United States Code.

4. I currently work in the Knoxville Field Office of the ATF. During my tenure as an ATF Special Agent, I have investigated numerous crimes including, but not limited to, felons in possession of firearms, unregistered weapons that fall under the National Firearms Act (Title 26 U.S.C), narcotics trafficking, to include narcotics trafficking involving firearms possession and use, home invasions, bank fraud and identity theft. I have become familiar with the methods, operations, and schemes commonly employed by individuals involved in the violation of narcotics and firearms statutes through my training and prior experience; including previous cases I have investigated with other municipal, state, and federal agents. I have investigated cases in the Eastern District of Tennessee involving violations of state and federal narcotics and firearms statutes and, as a result, I have been successful in arresting and convicting numerous individuals associated with narcotics distribution and illegal firearms possession. I have been involved in the execution of numerous search warrants dealing with the detection and investigation of federal narcotics and firearms violations. I have participated in federal and state wiretap investigations and prosecutions. As a result of these investigations and prosecutions, I have become aware of various methods and techniques utilized by individuals within the Eastern District of Tennessee and elsewhere to sell and distribute illegal firearms and narcotics.

5. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses.

7. Through my training and experience, discussions with other law enforcement agents, and my participation in other investigations involving firearms, including firearms, I know the following:

8. I am aware that firearms and narcotics traffickers use the U.S. Postal Service's (USPS) Express and Priority Mail, Federal Express (FedEx) and the United Parcel Service (UPS) to ship firearms and/or the proceeds from the sales of firearms because of the speed and reliability, as well as the ability to track the status of the delivery. I also know that firearms traffickers use the U.S. Mail to ship contraband and their proceeds because of the sanctity and protection afforded the United States Mail by federal statute.

9. I am familiar with the ways in which firearms and narcotics traffickers conduct their business, including but not limited to, the methods used to package, wrap, seal and otherwise disguise contraband sent through the mail.

10. I am aware that firearms and narcotics traffickers commonly keep in their residences records, whether written by hand, in printed hard-copy, or in digital format, of transactions relating to the ordering of, payments for, shipping of, importing, distribution, and secreting of contraband between them and their suppliers and customers.

11. It is common for firearms and narcotics traffickers to conceal contraband and proceeds of contraband sales in secure locations within their residences for ready access and to conceal these items from law enforcement authorities.

12. Firearms and narcotics traffickers commonly maintain in their residences contact information for their associates, customers, and suppliers (*i.e.,* names, email addresses, website addresses, physical addresses, and/or telephone numbers), to include written records in notebooks

or on miscellaneous papers, and/or in digital format, to include cellular telephones, tablets, and computers.

13. Firearms and narcotics traffickers usually keep at their residences paraphernalia for packing, weighing and distribution.

14. Firearms and narcotics traffickers typically keep at their residences records of financial accounts, to include financial accounts storing crypto-currencies (such as Bitcoin), as well as traditional U.S. currency-based accounts, in order to maintain and finance their ongoing illegal drug business and to be able to utilize the proceeds of their drug sales; further, it is common for such drug traffickers to secrete storage unit keys, access codes, and records, as well as safe deposit box keys and records, relating to the storage and safe-keeping of contraband, cash, and other valuables acquired from firearms trafficking.

## BACKGROUND ON ILLICIT FIREARMS AND NARCOTICS TRAFFICKING

1. Based upon my training, experience, and discussions with other federal agents related to the enforcement and investigation of federal and state firearm violations, I know the following:

    a. Firearms and narcotics trafficking organizations use numerous methods to insulate their illegal activities from detection by law enforcement. These methods are common to major firearms and ammunition trafficking organizations to varying degrees of sophistication.

    b. Illegal firearm and narcotics traffickers often utilize techniques to prevent the detection of firearms and firearm parts that are shipped unlawfully through mail and common carriers. Some common techniques include falsifying invoices, bills of sale, shipping papers, and customs forms to list the firearms contained in shipping packages as other items, including but not limited to firearms parts and

4

pieces (rather than firearms), and mechanical components used in the automotive, industrial, and machinery industries. Illegal firearm and narcotics traffickers have also been known to ship firearms concealed inside of other objects to avoid detection by law enforcement officials.

c.  Individuals involved in the illegal acquisition, possession, and transfer or sale of firearms do so in large part because they do not want to be identified by law enforcement. Therefore, these individuals go through surreptitious means to acquire, maintain, and transfer or sell firearms without complying with state and federal laws. By doing this, these individuals attempt to thwart efforts to trace firearms, making it difficult for law enforcement to identify the last known purchaser of a firearm recovered from a crime scene.

d.  Individuals involved with illegal firearm and narcotics trafficking activity often wear latex or vinyl gloves while handling firearms and narcotics when processing packages for shipment. This is done by traffickers to avoid leaving their fingerprints on items that could later be used as evidence against them.

e.  Individuals involved with illegal firearm and narcotics trafficking activity use complex methods for ordering, paying for, and transferring firearms, firearm components, and/or ammunition. Often, traffickers' create websites, use eBay auctions sites, and other online payment methods located on the internet, which are often difficult to trace; they use U.S. currency, money orders, crypto currency. Western Union wire-transfers, PayPal transactions, and pre-paid credit cards. They do this to hide the original source of funds from law enforcement.

f.  Persons engaged in illegal firearm and narcotics trafficking typically keep fruits, instrumentalities, and evidence of their criminal activities and associations

at their residences, places of business, storage lockers, vehicles, and other locations under their control. These items can include firearms (used both as items for sale and to protect the above items and profits), packaging materials, financial records, personal address/telephone books identifying co-conspirators, large sums of cash not immediately traceable to legitimate activity, indicia of control/ownership, and other items such as those more particularly described in Attachment B and incorporated herein by reference.

g.  Illegal firearm and narcotics trafficking often earn substantial cash proceeds that traffickers accumulate or convert to other assets, such as jewelry, vehicles, real estate, bank accounts, or investments. Financial and business records are often kept for firearm and ammunition trafficking activity and/or the accumulation/transformation of illicit proceeds.

h.  Individuals involved in illegal firearm and narcotics trafficking activity often conceal illicit firearms, firearm parts, narcotics, proceeds, documents, and other facilitating property in vehicles, garages, storage containers, sheds, and other buildings at a location under their control.

i.  Individuals involved in illegal firearm and narcotics trafficking also often store illicit items, proceeds, and other items related to illicit firearms and narcotics dealing "offsite," in storage units and safe deposit boxes. Such individuals often keep records of such locations and /or the keys to them at their residences or other places under their control.

j.  Individuals involved in illegal firearm and narcotics trafficking activity often use cellular telephones, tablets, computers, and other digital devices and electronic storage equipment are to facilitate the commission of criminal acts.

6

Further, I am aware that important evidence is often located within call histories, text messages, instant messages, e-mails, and voicemails or voice recordings and electronic storage equipment can take photographs that may capture evidence of criminal acts.

1. I am investigating Quintin Lamont LEWIS (B/M, DOB: 05/01/1991, SSN: 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), who is suspected of possession with the intent to distribute methamphetamine in violation of Title 21, United States Code, Sections 841 and 846 and possession of firearms in furtherance of a drug trafficking crime, in violation of Title 18, United States Code, Section 924(c).

2. I am submitting this affidavit in support of an application for a warrant to search the following cellular telephone(s): One (1) iPhone, Model: 11, cellphone, IMEI: 355230550912277, presently stored in secure law enforcement facility located at 710 Locust Street, Knoxville, TN 37902, as more fully described in Attachment A (hereinafter the "TARGET DEVICE");

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause for a search warrant authorizing the search of the TARGET DEVICE, I have not included each and every fact known to me concerning this investigation. Instead, I have set forth only the facts that I believe are necessary to establish probable cause to believe that the TARGET DEVICE contains evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Section 841 and 846, Title 18 United States Code 924(c) as further described in Attachment B.

## Probable Cause

1. On April 27, 2022, at approximately 20:45, Knoxville Police Department stopped a silver Honda Accord bearing Tennessee tag # 775BBKW for a window tint violation at

Merchants Drive and Debonair Drive. (The tag is registered to a David Owenby. The tag lists 1716 Merchants Drive, Apartment 3100 as the registered address. Through information from other law enforcement officers, I have learned that David Owenby is a known drug user and was a frequent visitor to 2612A Gaston Avenue.) The driver was identified as Octavus David CROCKETT from Illinois and did not have any for identification on his person. The vehicle was seen by Knoxville Police Department officers, parked at 1716 Merchants Drive at the Clear Springs Apartment complex near apartments 3000 and 3100 on April 27, 2022. CROCKETT did not have any form of ID on his person but provided his identifying information to the officers and they were able to confirm his identity. Investigators had requested the Knoxville Police Department Community Response Team (CRT) members to be on the lookout for the silver Honda Accord and there was reason to believe the vehicle was at the Clear Springs Apartment because the vehicle is registered to that address.) CROCKETT told the officers that the vehicle belonged to his cousin, but had to read the name (David Owenby) from the vehicle registration. Your affiant has reviewed David Owenby's driver's license photo and David Owenby is a white male and your affiant is not aware of any family relationship between David Owenby and CROCKETT. Law enforcement officers have previously observed this exact vehicle at 2612A Gaston Avenue on numerous occasions. This address was identified as a stash house and subject to a state search warrant on February 27, 2022. During the execution of the 2612A Gaston Avenue search warrant, law enforcement officers seized twenty (20) firearms, over 250 grams of suspected heroin, 62 grams of cocaine, 250 grams of suspected ice methamphetamine, and over $29,000 in United States Currency. This state search warrant, in combination with other investigative steps and arrests, led to the federal indictment of Quintin Lewis, Case No. 3:22-CR-18. Federal agents and members of the Knoxville Police Department Organized Crime Unit and Over-dose Deaths Task Force have been investigating the Lewis Brothers, Quintin and Carlos

8

Lewis, ADTO. Your affiant was granted a federal search warrant in Case No. 3:22-MJ-2080 for three (3) cellular phones seized from Quintin Lewis. The affidavit for that search warrant explains in further detail the Lewis Brothers ADTO, the search of 2612A Gaston Avenue, and the use of social media by the organization to continue the sale and distribution of narcotics and trafficking of firearms. The affidavit from 3:22-MJ-2080 is attached to this affidavit as Attachment C, which is fully incorporated herein. Your affiant believes, based upon the probable cause listed in this affidavit, the Lewis Brothers ADTO is continuing to operate from other apartments within Knoxville, despite the arrest and federal indictment of Quintin Lewis earlier this year.

2. On April 28, 2022, your affiant and ATF Task Force Officer Todd Strickenberger went to the Clear Springs Apartments to attempt to locate the silver Honda Accord bearing Tennessee tag 775BBKW. The vehicle was located and observed to be parked near apartments 3000 and 3100. The vehicle was then observed leaving the apartments and travelled to the Exxon gas station located at the intersection of Merchants Drive and Pleasant Ridge Road. The vehicle parked at the gas pumps and the driver exited the vehicle. The driver was a younger, heavyset black male with short hair; the identity of this male subject is unknown. It did not appear that any fuel was dispensed from the gas pump. It also appeared that the unknown black male made some conversation with another white male parked at another fuel pump, but no hand-to-hand transaction was observed. The vehicle then returned to the apartments and no other activity was observed.

3. On April 29, 2022, SA Makemson, SA Waggoner, TFO Strickenberger and Knoxville Police Department Organized Crime Unit Sergeant Phil Major conducted surveillance at the Clear Springs Apartments regarding Octavus CROCKETT, a confirmed 8 Tre Black P. Stone gang member from Chicago, Illinois. The "Black P. Stones" (sometimes referred to as

9

"The Almighty Black P. Stone Nation") is a Chicago, Illinois based street gang. The following is a timeline of the events and observations by law enforcement:

   a. 1341 hours: TFO Strickenberger observed the silver Honda Accord return to the complex. TFO Strickenberger observed CROCKETT exit the driver's seat and an unknown younger, slim, white male with long brown hair exited the front passenger seat.

   b. 1344 hours: CROCKETT is observed getting back in the driver's seat of the silver Honda Accord and driving out of the apartment's parking lot.

   c. 1349 hours: CROCKETT arrived at the Wishbone restaurant (4808 Clinton Highway) and pulls next to an older model, blue BMW SUV bearing Tennessee tag DRR253. SA Makemson observed an older white female walk from the driver's side of the silver Honda Accord and get into the driver's seat of the blue BMW SUV. There was also an older white male in the front passenger seat of the BMW SUV. The silver Honda Accord then immediately pulls away. Given the short amount of time and the observations of the interactions between the unknown female and the Honda Accord, your affiant believes this was a hand-to-hand transaction for narcotics.

   d. After, the hand-to-hand transaction, Sergeant Major observed the BMW SUV circle the parking lot of the Wishbones restaurant, park, then leave, go across the street to the Popeyes restaurant, and circle the parking lot again and then park again.

   e. 1400 hours: CROCKETT is observed pulling back into the Clear Springs Apartments and CROCKETT is observed entering apartment 3100.

f. 1411 hours: CROCKETT left the apartments and goes back to the Wishbones restaurant and parked near the back of the building, next to a portable storage unit. Your affiant observed an unknown white female walking away from CROCKETT's Honda Accord and back towards a white four door Kia sedan. Your affiant observed the Kia sedan had two other occupants and the Kia Sedan had a Tennessee tag 23AC59. This observation was consistent with a hand-to-hand narcotics transaction.

g. 1416 hours: The white Kia left the Wishbones restaurant. SA Makemson followed the white Kia until a marked Knoxville Police Department cruiser could observe the Kia. The marked unit conducted a traffic stop on the Kia and recovered approximately ½ gram on suspected heroin and several syringes from the occupants.

h. 1416 hours: CROCKETT arrived back at the apartments

i. 1438 hours: The silver Honda Accord left the apartments, but the driver was the younger, heavyset, black male wearing black pants, a black t-shirt with the word "Polo" on the front in white letters and had a short, braided twists hair style. This was the same black male that was observed driving the silver Honda Accord on April 27, 2022.

j. *** The vehicle was unable to be followed once it left at 1438 hours***

k. 1458 hours: a newer model Ford Taurus sedan bearing TN tag BFN0843 pulls into the parking lot of the Clear Springs Apartment complex. Two unknown black males are seen exiting the vehicle and walking towards the end of the apartment building. A third younger, heavy set, black male referenced above, was observed getting in the rear passenger seat of the Ford Taurus. All three

11

black males remained in the vehicle for a few minutes and then exited the vehicle and remained in the parking lot. CROCKETT was observed coming from the 3100 apartment building and joined the other three black males.

    l.   1527 hours: a KPD Marked Unit drives through the apartment complex and all the males leave the area and walk back to an unknown apartment.

4.     The two incidents described above, where CROCKETT met with the two different vehicles for a brief moment of time, then immediately returned to the Clear Springs Apartments are indicative of hand-to-hand narcotics transactions. Through my training and experience, narcotics traffickers do not possess or transport large quantities of narcotics in their vehicles when making narcotics sales and transactions due to the risk of traffic stops by law enforcement and the inherent dangers of drug trafficking, to include the risk of robbery by other criminal elements. In my training and experience, narcotics traffickers, such as the Lewis ADTO, will maintain a stash house(s) to keep and protect larger amounts of narcotics, firearms, and U.S. Currency, and transport smaller user amounts of narcotics for distribution.

5.     On May 20, 2022, ATF Knoxville Field Office personnel and Knoxville Police Department Organized Crime Unit personnel conducted a surveillance operation of the TARGET RESIDENCE at 1716 Merchants Drive, Apartment 3100, Knoxville, Tennessee, 37912 (Clear Springs Apartments) regarding CROCKETT and a silver Honda Accord displaying Tennessee tag # 775BBKW. All times listed below are approximate:

    a.   Surveillance began around 13:14 hours with SA Makemson checking the parking lot of the apartment complex for the silver Honda Accord; the Honda was not at the apartment. As SA Makemson was exiting the complex, SA Makemson passed the Honda with CROCKETT driving. Law enforcement

maintained constant visual contact on Apartment 3100 and the parking lot where the Honda is known to park.

b. At 13:26, an unknown white male, with long brown hair was seen knocking on the door to Apt 3100, the unknown white male was let into the apartment. At 13:28, a black male with shoulder length dread locks, wearing a white shirt and black shorts was seen leaving Apartment 3100, this was confirmed to be CROCKETT; CROCKETT was then observed entering the Honda and leaving the complex. At 13:30 CROCKETT pulled out onto Merchants Drive toward Clinton Highway, then took Clinton Highway, southbound towards Interstate 275, then took Interstate 275 South and continued to the Woodland Avenue/Oldham Avenue Exit. CROCKETT then took Woodland Avenue northeast towards North Broadway. Visual was lost at approximately 13:40 and was regained at 13:47 at Coker Ave and Broadway. CROCKETT was then observed taking Woodland Avenue back southwest towards Interstate 275; contact was briefly lost again but CROCKETT was then observed north on Clinton Highway near Merchants Drive. At 14:00, CROCKETT was seen walking back into Apartment 3100. Given the short length of time, your affiant believes CROCKETT was conducting a narcotics transaction near Coker Avenue and Broadway, which is where the LEWIS ADTO previously did several of their narcotics deals during the time they were more active in the Broadway area. Additionally, this is the modus operandi of the ADTO and as witnessed by law enforcement during previous surveillance operations.)

13

c. At 14:30, an unknown white female was seen leaving Apartment 3100 and entering a white four door hatchback style vehicle, later determined to be a Chevrolet Malibu with a hatchback trunk, dark tinted windows, and black wheels, displaying Tennessee tag # 675BBWD.

d. At 14:37, CROCKETT was seen leaving Apartment 3100 and entering the Honda; at 14:38 CROCKETT is seen leaving the complex and taking Merchants Drive towards Clinton Highway. At 14:41, CROCKETT was seen going south on Clinton Highway and at 14:43 is seen taking Interstate 275 South. At 14:45 CROCKETT was seen exiting the Woodland Avenue/Oldham Avenue Exit and turns right onto Oldham Avenue, then right again onto Elm Street and then right into the Dollar General parking lot (1612 Elm Street, Knoxville, TN). At 14:46, CROCKETT pulled into a parking space, next to light blue Honda Civic, displaying TN Tag 28AU13. The driver of the Honda, an unknown white female, exited the light blue Honda Civic and entered the front passenger seat of the silver Honda Accord that CROCKETT was driving. At 14:47, CROCKETT was seen leaving the Dollar General parking lot and turning northeast back onto Oldham Avenue towards Interstate 275 N; CROCKETT was followed back to the Merchants Drive and at 14:58 CROCKETT was seen walking back into Apartment 3100.

e. At 14:51, the light blue Honda Civic was seen exiting the Dollar General parking lot to Oldham Avenue and entering Interstate 275 southbound, to Interstate 40 Eastbound to Rutledge Pike; during this time surveillance units observed several traffic violations (failure to maintain lane x 3) on the light blue Honda Civic. The light blue Honda Civic took the Rutledge Pike exit and

14

stopped at the red light at exit ramp to Rutledge Pike. As soon as the light turned green, a marked Knoxville Police Department K9 patrol unit conducted a traffic stop on the light blue Honda Civic. The driver, whose identity is known to law enforcement, was found to be driving on a revoked license and detained. During a search of the vehicle, a small amount of crack cocaine was found in a change purse belonging to the driver, a small piece of suspected crack cocaine found under the passenger seat as well as a set of digital scales, and a cut snorting straw. The passenger was found to have a suboxone strip inside her bra. Both were transported to the Knoxville Police Department Organized Crime Unit for questioning.

f. At 15:17, CROCKETT is observed leaving Apartment 3100, entering the silver Honda and leaving the complex; CROCKETT went west onto Merchants Drive towards Pleasant Ridge Road, visual was lost until 15:24 and then CROCKETT was observed travelling back eastbound on Merchants towards the apartment complex. At 15:27, CROCKETT is seen walking back into the Apartment 3100. Prior to CROCKETT being spotted eastbound on Merchants Drive, SA Kristin Pyle advised she possibly saw the silver Honda leave the parking lot of the Dollar General (5405 Pleasant Ridge Road) near the intersection of Pleasant Ridge Road and Merchants Drive. Due to the short time that CROCKETT was not followed, your affiant believes that CROCKETT conducted another narcotics transaction at the Dollar General, because he left the apartment, went to a location close by and then immediately returned to the apartment; this is the modus operandi that has been observed earlier in the day and on previous surveillance operations.

15

g. At 15:49, CROCKETT was seen leaving Apartment 3100 and getting into the silver Honda and left the complex going east on Merchants Drive, then southeast on Tillery Road, then south on Bradshaw Gardens Drive, then southeast on Pleasant Ridge Road, then south on Sanderson Road to Western Avenue. CROCKETT continued south on Sanderson Road to Liberty Street then south on Liberty Street to Division Street; CROCKETT was seen turning east onto Division Street but the lead surveillance unit did not see CROCKETT turn and continued south on Liberty Street to Sutherland Avenue. Other surveillance units circulated the area but were unable to locate CROCKETT. The surveillance operation was then terminated.

6. On May 20, 2022, ATF Special Agent James Makemson and Knoxville Police Department Investigator Sara Morgan conducted a custodial interview of the female driver (hereinafter "Female Driver") of the Honda Civic referenced above at the Knoxville Police Department Organized Crime Unit, following her arrest for possession of suspected crack cocaine from a traffic stop.

7. The Female Driver waived her *Miranda* rights and agreed to an interview. The Female Driver stated the crack cocaine that was located in her change purse was old and she did not even remember that it was in there. The Female Driver stated she has been trying to get off of using heroin and has been in and out of jail for possession of drug paraphernalia, theft and driving without a driver's license.

8. SA Makemson questioned the Female Driver specifically about the interaction that occurred at the Dollar General parking lot on Elm Street and Oldham Avenue. The Female Driver stated she received some text messages from her source of heroin, whom she calls "Black on Black"; she stated she does not know her source's name, but she listed him as "Black on

Black" in her phone because he is a black male and the heroin she usually receives from him is black in color. The Female Driver described her source as a black male, early 30's, dread locks to the shoulder, medium build and he drives a gray Honda Accord, with tinted windows and a sunroof. The Female Driver stated on Thursday, May 19, 2022, she received some text messages from the source saying he told her he missed her, and the source then offered her some heroin "on the house", which she understood to be free. The Female Driver then stated they texted around 13:30 on May 20, 2022, to arrange the transaction for later in the afternoon.

9. On May 20, 2022, at approximately 14:37, the Female Driver was told to go to the Dollar General on Oldham Avenue by her source (identified as Octavus CROCKETT). The Female Driver stated CROCKETT arrived and she got into the front passenger seat of the vehicle CROCKETT was driving. She further stated CROCKETT then asked for money for the purchase of the heroin, but the Female Driver told CROCKETT she did not have any money and that he could not give it to her for free, this time. The Female Driver stated did not obtain any heroin from CROCKETT at this interaction; but she stated she was supposed to receive 0.5 grams of heroin.

10. SA Makemson asked the Female Driver if he and Investigator Morgan could look at the text message thread between her and CROCKETT and she consented to the request. The Female Driver did state that one of CROCKETT's associates had been arrested (more than likely referring to Quintin Lewis, although the Female Driver could not identify the associate) and she did not hear from CROCKETT for several months. According to the text message thread, there were no text messages from CROCKETT between January 18, 2022, and March 30, 2022, which is during the time that Quintin Lewis was arrested and charged. A review of the text message thread corroborated the Female Driver's description referenced above regarding the narcotics transaction between her and CROCKETT.

11. On May 24, 2022, the Female Driver called Investigator Morgan and stated she was not wholly truthful during the first interview on May 20, 2022. The Female Driver stated she did in fact receive approximately 0.5 grams of heroin. When a KPD patrol vehicle attempted a traffic stop, the Female Driver became scared and swallowed the plastic baggie containing the 0.5 grams of heroin. The Female Driver stated the bag must have ruptured and that she lost consciousness the night of May 20, 2022 into the morning of May 21, 2022 and regained consciousness sometime during the early morning hours of May 21, 2022.

12. On May 26, 2022, the ATF Knoxville Field Office executed a federal search warrant at 1716 Merchants Drive, Apartment 3100, Knoxville, Tennessee. The occupants of the apartment were Octavus CROCKETT, David Owenby, Summer Shelton and two children. Several items of evidentiary value were located inside the room CROCKETT was located in. The items are as follows:

    a. A black safe (not taken into evidence), but the contents:

        1. Approximately 28 grams of suspected heroin

        2. $11,142 US Currency

    b. 3 sets of digital scales

    c. 1 small rock hammer with residue

    d. 1 blender bottle with residue

    e. 2 large containers of cutting agents (Benefiber and lactose)

    f. 4 GB micro SD card

    g. A red iPhone 11 with black case – Taken from CROCKETT (the TARGET DEVICE)

    h. A homemade, single shot, .22 caliber pistol with no serial number

    i. 1 round of .22 caliber ammunition

13. Also located inside the residence, in the living room, were the following items:

 a. An LG Tracfone cell phone with charging cord

 b. A ZTE model: Z740G cell phone

14. Given the aforesaid facts, I believe there is probable cause to believe that CROCKETT used his cellular phone, the TARGET DEVICE, to conduct narcotics trafficking, and the contents of the device will contain evidence of 21 USC 846 and 841.

15. The TARGET DEVICE was seized on May 26, 2022 and has remained within ATF's custody since. The contents and data on the TARGET DEVICE have not been searched, altered, or reviewed in any manner other than being placed in "Airplane" mode. Based on your affiant's training and experience, "Airplane" mode turns off the cellular signal and any wifi connectivity to the TARGET DEVICE, therefore preserving the contents and data of the TARGET DEVICE. The TARGET DEVICE in "Airplane" mode may not be remotely accessed or factory reset, which would delete the content and data. Therefore, your affiant believes the content and data of the TARGET DEVICE are preserved in the same state and conditions as of May 26, 2022 and the date of this search warrant application.

16. The owner of the TARGET DEVICE, Octavus CROCKETT, was indicted on June 14, 2022. CROCKETT made his initial appearance before the Court on a criminal complaint on May 26, 2022. Over the course of June and July of 2022, CROCKETT, through his counsel, communicated a willingness to cooperate and willingness to consent to a search of the TARGET DEVICE. However, over the course the previous two weeks of the date of this affidavit, CROCKETT has refused to cooperate and communicated he was no longer interested in cooperating with or providing consent for the government to search the TARGET DEVICE. Therefore, your affiant is seeking this search authorization to search the TARGET DEVICE and

19

believes probable cause exists that the TARGET DEVICE will contain evidence of narcotics trafficking in violation of Title 21, United States Code, Section 846, 841(a)(1) and 841(b)(1)(A).

Respectfully submitted,

_____
James Makemson
Special Agent
ATF

Subscribed and sworn to before me on October 19th, 2022.

_____
DEBRA C. POPLIN
UNITED STATES MAGISTRATE JUDGE

20
Case 3:22-mj-01215-DCP  Document 2  Filed 08/09/23  Page 20 of 20  PageID #: 21